## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROBERT BERLINGER, DANNY COLLINS, and DAVID STOCKTON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VIAGOGO INC., <br><br> Defendant. | Case No: 1:25-cv-4380 <br><br> **CLASS ACTION COMPLAINT** <br><br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Robert Berlinger, Danny Collins, and David Stockton bring this Class Action Complaint ("Complaint") against Viagogo Inc. as individuals and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsels' investigation, and upon information and belief as to all other matters, as follows:

### NATURE OF ACTION

1.      Defendant Viagogo Inc. uses a bait-and-switch purchase flow to lure consumers into purchasing tickets for concerts, sporting events, and other live entertainment through its website. Specifically, Viagogo advertises misleading low initial ticket prices that do not include added fees—the "bait." Viagogo uses the misleading low advertised price to entice consumers to click through many screens in its purchase flow, including selecting an event, inputting the number of tickets and selecting whether the tickets should be together, selecting tickets in a specific seat or area in the venue, inputting or confirming personal information, selecting a payment method, and making the decision to buy. Only at checkout, after this lengthy process, does Viagogo for the first time list a total amount that includes hidden fees in unpredictable amounts—the "switch."

2.      Viagogo intentionally uses a deceptive initial low price and hides its fees at the end of the purchase flow instead of presenting the fees to consumers at the outset of the transaction.

As a result, the deceptively lower ticket prices advertised in the initial ticket search draw consumers in and entice them down the path to purchase. Having been drawn in by Viagogo's intentional use of a deceptive low price at the outset, consumers proceed through to the checkout screen without ever becoming aware of the amount of fees that ultimately will be included in the total price.

3.     After Viagogo only provides consumers with a deceptive low price at the outset to consider as they click through the time pressured purchase flow to the last screen, Viagogo finally and belatedly discloses its fees. At this final screen at the end of the process, consumers—now invested in the decision to buy based on the initial low price at the outset—will purchase at the inflated price even though that was not what they thought they had bargained for.

4.     In its scheme to use initial low prices to persuade consumers to buy before they ever see hidden fees, Viagogo uses a time-pressured popup displaying a countdown button that claims the misleading low initial advertised price is only "locked" for ten minutes. The popup is accompanied by a countdown timer that says "Your price is only guaranteed for this time!" Of course, at this point, the only price consumers have in mind is the low advertised price because Viagogo is still waiting to add its fee. Thus, the "price" that is "guaranteed" is not the actual price because it does not include Viagogo's hidden fees.

5.     After closing the popup, if the consumer does not continuously click through Viagogo's screens and takes a few minutes to input information, Viagogo will display additional popups enticing the consumer to "Secure your tickets!" and "complete your purchase now to secure your tickets at this price."

6.     Industry research has demonstrated that when a ticket seller uses a low initial price and then later adds fees to hide the true cost of items, (i) consumers focus on the deceptively low initial base price and build purchasing commitment through several intermediate steps, and (ii)

consumers will buy more tickets and tickets at higher prices because of their endowed progress when a ticket seller does not display the full price up front.[1] Thus, rather than providing clear, upfront disclosures as to the services they offer, as required by law, Viagogo deceives consumers by obscuring the true price of their product, which impairs consumers' decision-making process, causes consumers to pay fees they otherwise would not have paid, influences consumers to buy more tickets at higher prices, and prevents consumers from comparing ticket prices against Viagogo's competitors and even on Viagogo's own website.

7.     Worse, for events in certain states, Viagogo discloses the actual price inclusive of fees up front, while for events in other states it still uses a deceptively low initial price that does not include fees. That Viagogo selectively displays the actual price, inclusive of fees, to customers purchasing tickets for events in certain states shows that Viagogo is capable and has its own systems set up to display accurate pricing up front instead of deceptively hiding its fees at the end. But Viagogo hides its fees from consumers purchasing tickets for events in states where Viagogo has not activated all-in pricing capabilities, even if those consumers reside in states whose law prohibits bait-and-switch schemes like Viagogo's and requires fees to be displayed up front.

8.     By hiding added fees at the very last step of the sale, Viagogo has raked in millions of dollars in ticket sales and in hidden additional fees at the expense of consumers who are drawn in by its artificially low ticket prices.

9.     As a result of Viagogo's false advertising, Plaintiffs and the proposed Classes have suffered damages. They purchased tickets they would not have otherwise bought and paid fees they would not have otherwise paid, had they not been lured in by Viagogo's deceptively low ticket prices.

---

[1] Tom Blake et al., *Price Salience and Product Choice*, 40 Marketing Science 4, pp. 619–36 (July-Aug. 2021), *available at* https://perma.cc/9BQE-E6KU.

10.    Viagogo's misleading advertised ticket prices and bait-and-switch scheme are false and misleading advertisement in violation of California's Unfair Competition Law (the "UCL") (Cal. Bus. & Prof. Code § 17200), California's False Advertising Law (the "FAL") (Cal. Bus. & Prof. Code § 17500), California's Consumer Legal Remedies Act (the "CLRA") (Cal. Civ. Code §§ 1750 *et seq.*), the Colorado Consumer Protection Act (C.R.S.A. § 6-1-101 *et seq.*), and the New Jersey Consumer Fraud Act ("NJCFA") (N.J. Stat. Ann. §§ 56:8-1 *et seq.*).

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are at least 100 putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and Members of the proposed Class, including Plaintiffs, are citizens of states different from Defendant.

12.    This Court has jurisdiction over Defendant because its principal place of business is in this District. Defendant intentionally avails itself of the markets within this District to render the exercise of jurisdiction by this Court just and proper. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District and a substantial part of the events and omissions giving rise to this action occurred in this District.

## PARTIES

14.    Plaintiff Robert Berlinger is a natural person and resident of New Jersey.

15.    Plaintiff Danny Collins is a natural person and resident of Colorado.

16.    Plaintiff David Stockton is a natural person and resident of California.

17.    Defendant Viagogo Inc. is a Delaware corporation with a principal office located

at 3 World Trade Center, 175 Greenwich Street, 59th Floor, New York, NY, 10007.

## FACTUAL ALLEGATIONS

**I.    Viagogo's Bait-and-Switch Pricing Scheme**

18.    Viagogo is one of the many online ticket exchange websites that market and sell tickets for sports, concerts, theater, and other live entertainment events.

19.    Consumers can use the Viagogo website (http://www.viagogo.com) or mobile app to search for and purchase tickets to events happening across the country or abroad.

20.    Viagogo advertises artificially low ticket prices to gouge consumers with hidden added fees via a deceptive bait-and-switch scheme that misleads consumers as to the actual price of Viagogo's fees when purchasing tickets through Viagogo's website.

21.    Using a practice called "partitioned pricing," Viagogo divides the price of its products into a base price and additional fees above and beyond the base prices of the tickets sold on its website.[2] But Viagogo hides its fees when the initial ticket price is displayed. In fact, Viagogo does not disclose these fees to customers until the very last step in the purchase—after the customer has already gone through several steps to commit to the purchase by searching for tickets, selecting an event, inputting the number of tickets and selecting whether the tickets should be together, selecting tickets in a specific seat or area in the venue, inputting or confirming personal information, selecting a payment method, and making the decision to buy based on the initially low price that Viagogo advertised.

22.    Customers must also click through pop-up buttons that deceptively promise to "lock" in the misleading low advertised price. The pop-up is accompanied by a deceptive count-down timer that warns the tickets "may not be available again at this price if you abandon them." If

---

[2] Zhiqi Chen, *A Theory of Partitioned Pricing*, Carleton Economics Working Papers 22-02, pp. 1-27 (Mar. 2, 2022), *available at* https://carleton.ca/economics/wp-content/uploads/cewp22-02.pdf.

consumers click away from the Viagogo tab or take more than a few minutes to complete the purchase, or to read Viagogo's terms, Viagogo will display another pop-up window prominently showing the countdown timer and enticing consumers to "Secure your tickets!" and "Complete your purchase now to secure your tickets at this price." The "prices" that Viagogo's misleading pop-ups and countdown timers advertise are misleading because they do not include Viagogo's fees.

23.    Viagogo's fees are not a set fee amount or even a set percentage of every purchase. Since the fees range dramatically, consumers cannot predict the amount of the fee that will be added to the total amount after they have already gone through several steps and made the decision to buy. The fees are unlikely to be accurately anticipated by consumers, unlike taxes or standard shipping fees. Instead, reasonable consumers focus on the price presented to them—the deceptively low price that does not include fees—as they build purchasing commitment by clicking through the obstructions that Viagogo uses in its purchase flow.

24.    Viagogo's deceptive pricing scheme is accomplished in the manner depicted below. For example, a consumer seeking to purchase tickets to see Billy Joel and Stevie Nicks performing at Metlife Stadium would experience the following[3]:

---

[3] The following screenshots were taken on May 7, 2025.

a.     First, the consumer is shown the event with ticket prices, behind a pop-up screen that asks the consumer to confirm the number of tickets and whether the tickets should be together:



b.     After confirming the number of tickets, Viagogo displays the ticket options and low initial prices:



c.      Viagogo continues to display the misleading low advertised price as the consumer selects their seats:



d.      After a consumer clicks "Select," Viagogo again displays the misleading low advertised price but first presents the consumer with a pop-up window promising to "lock" the misleading low advertised price:



e. After the consumer clicks "Start," the pop-up changes to state "Your price is locked!" The "price" refers to the misleading low advertised price that does not include Viagogo's fees.



f. Viagogo then again displays the misleading low advertised price without fees, along with a countdown timer:



g.      If the consumer mouses over the countdown timer, it warns that "these tickets may not be available again at this price if you abandon them." "This price" refers to the misleading low advertised price without Viagogo's fees:



h.      The countdown timer also appears in the tab at the top of the page:



i.     After hitting "continue," Viagogo continues to display the misleading low advertised price and asks the consumer to input contact information:



j.     Then, still displaying the misleading low advertised price, Viagogo asks the consumer to select a payment method:



k.    Viagogo continues to display the misleading low advertised price as it asks

the consumer to input billing information:



l.    Only at the very end of this lengthy process, when Viagogo asks the customer

to input their payment information (the equivalent of handing over a credit card) does

Viagogo finally display the actual price of the tickets including fees:



m.    If a consumer navigates away from the purchase flow during the transaction, such as to read Viagogo's terms, Viagogo presents a new pop-up enticing the consumer to "Secure your tickets!"



n.    But if the consumer does not complete the transaction within ten minutes, Viagogo returns the consumer to the event page, requiring the consumer to start the process over again:



25.    Thus, by the time consumers are finally and belatedly confronted with a total price that includes added fees, consumers have already taken several steps to commit to the transaction, including searching for tickets, selecting an event, inputting the number of tickets and selecting whether the tickets should be together, selecting tickets in a specific seat or area in the venue, inputting or confirming personal information, selecting a payment method, closing pop-ups, and making the decision to buy.

26.    This pricing scheme is a classic bait-and-switch, in which consumers rely on the deceptive advertising to decide to buy merchandise. Then the consumer, now invested in the decision to buy and swept up in the momentum of events, nonetheless buys at the inflated price, despite their better judgment. Such false and misleading advertising is actionable under state consumer protection laws.

27.    Viagogo is a large online retailer that is sophisticated with respect to advertising. Viagogo knows or should know that its pricing operates as a bait-and-switch.

28.    Viagogo knows or should know of industry research showing that when a ticket seller uses hidden fees to obscure the true cost of items until the end of the transaction, (i) consumers focus on the deceptively low initial base price and build purchasing commitment through several intermediate steps, and (ii) consumers will buy more tickets and tickets at higher prices because of their endowed progress when a ticket seller does not display the full price up front.[4] Viagogo should know of this research as it was conducted using data from StubHub, Viagogo's parent company.

29.    Consumers who are not provided the complete price until checkout are likely to proceed with their purchase even after the fee is revealed because they have already factored the deceptively low price into their decision and built purchasing commitment as they clicked through

---

[4] Tom Blake et al., *Price Salience and Product Choice*, 40 Marketing Science 4, pp. 619–36 (July-Aug. 2021), *available at* https://perma.cc/9BQE-E6KU.

the transaction. As the FTC's Bureau of Economics has explained, the use of deceptively low prices at the outset of transactions while hiding fees until the end of the transaction adds steps to the process of determining the actual price of a good or service, which forces consumers to pay more than they would if initially presented with full, complete prices.[5]

30.    Because of Viagogo's deceptively low advertised prices, which do not include fees, and because the process of clicking through the transaction builds purchasing commitment, consumers proceed with the transaction even after exorbitant and unpredictable fees have been added despite their better judgment—despite the fact that continuing to search for cheaper prices would be more "optimal"—because consumers want to avoid "the cost of the time and cognitive effort involved" in continuing to search for a product or service.[6]

31.    As shown in the research, Viagogo's deceptive scheme impairs consumers' decision-making process, causes consumers to pay fees they otherwise would not have paid, influences consumers to buy more tickets at higher prices, and prevents consumers from comparing ticket prices against Viagogo's competitors and even on Viagogo's own website. Once a consumer decides what to buy, they are unlikely to depart from that decision because of the "additional cognitive effort" involved in resuming their search.

32.    In other words, omitting fees from the advertised cost of a product or service induces consumers to buy based on deceptively low prices such that at the end of the purchase flow, which is designed to build their commitment to purchase with each click, consumers pay higher total prices than they otherwise would.

33.    Indeed, as companies that engage in similar bait-and-switch schemes know,

---

[5] Mary W. Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, Bureau of Economics Fed. Trade Comm'n (Jan. 2017), at 2-3, https://perma.cc/A4GT-NUW7.
[6] Sullivan, *Economic Issues: Economic Analysis of Hotel Resort Fees*, at 16-17.

consumers choose products and services based on the initial advertised price, not on the price displayed after multiple steps in the purchase flow.[7]

34.    Viagogo further reinforced its deception by using countdown popups that promised to lock in the misleading low advertised price, to compel consumers to complete transactions before learning the true cost. Countdown timers and limited time messages create further pressure to purchase and further impair decision-making.[8] In fact, following a dialogue with the European Commission, Viagogo agreed to "substantially reduc[e] the number of countdown messages that appear on its website"—but only for its European platform.[9]

35.    Viagogo shows true prices with fees included at the outset of the transaction for events in a handful of states—California, Colorado, Connecticut, Maryland, Minnesota, New York, North Carolina, and Tennessee. This shows that Viagogo is capable and has its own systems set up to display accurate pricing up front instead of deceptively hiding its fees at the end. But Viagogo hides its fees from consumers who reside in those states purchasing tickets for events in places where Viagogo has not activated all-in pricing capabilities. This is true even if those consumers reside in states like California whose laws require fees to be displayed up front. That means that as of May 2025, a consumer sitting in California looking at an event in *any state other than* California, Colorado, Connecticut, Maryland, Minnesota, New York, North Carolina, or Tennessee would see

---

[7] Alexander Rasch et al., *Drip Pricing & Its Regulation: Experimental Evidence*, 176 J. Econ. Behavior & Org. 353 (2020), *available at* https://www.sciencedirect.com/science/article/abs/pii/S0167268120301189 ("[B]uyers . . . . based their purchase decision exclusively on the base price").

[8] *See, e.g.*, FTC Bureau of Consumer Protection, *Bringing Dark Patterns to Light* at 4 (Sept. 2022), *available at* https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2 022%20-%20FINAL.pdf.

[9] European Commission, *Online ticket marketplace Viagogo commits to improving terms and consumer information after dialogue with Commission and consumer authorities* (May 15, 2024), *available at* https://ec.europa.eu/commission/presscorner/detail/en/ip_24_2631.

a deceptively low price that does not include fees.

36.     It is indisputable that the advertised price of Viagogo's tickets is material to consumers. And it is also indisputable that the fact that the price of tickets Viagogo advertises does not match the total purchase price of the tickets was and is material to the consumers to whom the advertising was and is directed.

37.     Unsurprisingly, many consumers have been duped into purchasing tickets from Viagogo by its false and misleading pricing practices. All consumers who have been enticed into purchasing tickets from Viagogo by the pricing practices described in this Complaint have suffered damage as a result of Viagogo's false and misleading pricing practices.

38.     The consumers who purchased tickets from Viagogo suffered damage in the amount of hidden fees they paid, in amounts to be proven at trial.

**II.     Named Plaintiffs' Allegations**

    **A.     Robert Berlinger**

39.     Robert Berlinger has used Viagogo to purchase tickets on at least one occasion.

40.     On March 21, 2025, while residing in New Jersey, Berlinger searched for tickets to an upcoming Hozier concert for himself and his family in Camden, New Jersey. He purchased the tickets directly from Viagogo.

41.     Through his search, Berlinger identified four tickets priced in the low $70s—the cheapest he had seen in the marketplace. He had never heard of Viagogo before seeing tickets advertised as priced in the low $70s per ticket.

42.     Relying on the low advertised price, Berlinger clicked through the Viagogo purchase flow. He selected his tickets, the number of tickets, and the area of the event space, the Freedom Mortgage Pavilion.

43.     He saw the pop-up window promising that he could "lock in" his price.

44.     He input his personal information and selected his payment method.

45.     Only at the very end of the process, after Berlinger searched for tickets, input the number of tickets, chose an area of the Pavilion, selected his tickets, observed the "lock in" price promise, confirmed the number of tickets, input his contact information, and chose a payment method did Viagogo finally reveal the total price of the four tickets: $384.74. The price was significantly higher—approximately $96 per ticket higher—than the price that Viagogo had offered Berlinger at every preceding step of the purchase flow.

46.     Berlinger selected his tickets based on an initial lower price. He relied on the initial lower price in deciding to purchase the tickets as he proceeded through Viagogo's required purchase flow.

47.     Viagogo's deceptive lower advertised price was a substantial factor causing Berlinger's decision to buy.

48.     Berlinger did not learn of the actual, inflated ticket prices until he reached the final purchase page because Viagogo had not disclosed that information to him.

49.     Even though Berlinger eventually saw that the actual ticket price was higher than the prices initially advertised, since he had already taken many steps down the path to purchase, he bought the tickets at the inflated price.

50.     The pressure these events, including having selected tickets at the advertised price, viewing Viagogo's promise to lock in his price along with the countdown timer ticking down, and entering his personal information, brought to bear on Berlinger's judgment played a substantial role in leading him to purchase the tickets he did, even though the price appeared higher than he expected at checkout.

51.     Because he only ever saw a total price after he went through several steps toward purchasing his ticket, he was too far down the road to purchase to effectively price shop with other

vendors.

52.    If Viagogo were enjoined from waiting until the end to disclose the amount of fees, and Berlinger could consider the addition and amount of fees at the outset, he would purchase tickets from Viagogo again in the future.

**B.    Danny Collins**

53.    Danny Collins has used Viagogo to purchase tickets on at least one occasion.

54.    On June 21, 2023, while residing in Colorado, Collins searched for tickets to an upcoming Hozier concert in Zurich, Switzerland. He purchased the tickets directly from Viagogo.

55.    Through his search, Collins identified two tickets advertised at a price of ₣134.47 each, for a total of ₣268.94.[10]

56.    Relying on the low advertised price, Collins clicked through the Viagogo purchase flow. He selected his tickets, the number of tickets, and the area of the event space, Halle 622.

57.    He saw the pop-up window promising that he could "lock in" his price.

58.    He input his personal information and selected his payment method.

59.    Only at the very end of the process, after Collins searched for tickets, input the number of tickets, chose an area of the venue, selected his tickets, observed the "lock in" price promise, confirmed the number of tickets, input his contact information, and chose a payment method did Viagogo finally reveal the total price of the tickets: ₣314.23. The price was significantly higher than the initial low advertised price of ₣268.94 because it included a so-called "booking fee" of ₣40.34 and a so-called "handling fee" of ₣4.95.

60.    Collins selected his tickets based on an initial lower price. He relied on the initial lower price in deciding to purchase the tickets.

---

[10] Collins purchased the tickets in Swiss Francs (₣ or CHF).

61.     Viagogo's deceptive lower advertised price was a substantial factor causing Collins's decision to buy.

62.     Collins did not learn of the actual, inflated ticket prices until he reached the final purchase page because Viagogo had not disclosed that information to him.

63.     Even though Collins eventually saw that the actual ticket price was higher than the prices initially advertised, since he had already taken many steps down the path to purchase, he bought the tickets at the inflated price.

64.     The pressure these events, including having selected tickets at the advertised price, viewing Viagogo's promise to lock in his price along with the countdown timer ticking down, and entering his personal information, brought to bear on Collins's judgment played a substantial role in leading him to purchase the tickets he did, even though the price appeared higher than he expected at checkout.

65.     Because he only ever saw a total price after he went through several steps toward purchasing his ticket, he was too far down the road to purchase to effectively price shop with other vendors.

66.     If Viagogo were enjoined from waiting until the end to disclose the amount of fees, and Collins could consider the addition and amount of fees at the outset, he would purchase tickets from Viagogo again in the future.

**C.     David Stockton**

67.     David Stockton has used Viagogo to purchase tickets on at least one occasion.

68.     On September 29, 2024, while residing in California, Stockton searched for tickets to an upcoming football game – San Francisco 49ers versus Seattle Seahawks, at Lumen Field, in Seattle, Washington.

69.     Through his search, Stockton identified two tickets advertised at a price of $367.20

each, for a total of $734.40.

70.     Relying on the low advertised price, Stockton clicked through the Viagogo purchase flow. He selected his tickets, the number of tickets, and the area of the stadium.

71.     He saw the pop-up window promising that he could "lock in" his price.

72.     He input his personal information and selected his payment method.

73.     Only at the very end of the process, after Stockton searched for tickets, input the number of tickets, chose an area of the venue, selected his tickets, observed the "lock in" price promise, confirmed the number of tickets, input his contact information, and chose a payment method did Viagogo finally reveal the total price of the tickets: $1,034.11. The price was significantly higher than the initial low advertised price of $734.40 because it included a so-called "booking fee" of $293.76 and a so-called "handling fee" of $5.95.

74.     Stockton selected his tickets based on an initial lower price. He relied on the initial lower price in deciding to purchase the tickets.

75.     Viagogo's deceptive lower advertised price was a substantial factor causing Stockton's decision to buy.

76.     Stockton did not learn of the actual, inflated ticket prices until he reached the final purchase page because Viagogo had not disclosed that information to him.

77.     Even though Stockton eventually saw that the actual ticket price was higher than the prices initially advertised, since he had already taken many steps down the path to purchase, he bought the tickets at the inflated price.

78.     The pressure these events, including having selected tickets at the advertised price, viewing Viagogo's promise to lock in his price along with the countdown timer ticking down, and entering his personal information, brought to bear on Stockton's judgment played a substantial role in leading him to purchase the tickets he did, even though the price appeared higher than he expected

at checkout.

79.    Because he only ever saw a total price after he went through several steps toward purchasing his ticket, he was too far down the road to purchase to effectively price shop with other vendors.

80.    If Viagogo were enjoined from waiting until the end to disclose the amount of fees, and Stockton could consider the addition and amount of fees at the outset, he would purchase tickets from Viagogo again in the future.

<u>**CLASS ALLEGATIONS**</u>

81.    Plaintiffs bring this class action on behalf of themselves and on behalf of all others similarly situated, pursuant to Fed. R. Civ. P. 23.

82.    The Classes that Plaintiffs seek to represent are defined as follows:

> **Nationwide Class:** All persons in the United States who, during the applicable statute of limitations through the date a class is certified, (1) purchased at least one ticket from Viagogo and (2) paid fees to Viagogo above the advertised ticket price (3) that were not included in the advertised price at the beginning of the Viagogo purchase flow.

> **New Jersey Subclass:** All persons in New Jersey who, during the applicable statute of limitations through the date a class is certified, (1) purchased at least one ticket from Viagogo and (2) paid fees to Viagogo above the advertised ticket price (3) that were not included in the advertised price at the beginning of the Viagogo purchase flow.

> **Colorado Subclass:** All persons in Colorado who, during the applicable statute of limitations through the date a class is certified, (1) purchased at least one ticket from Viagogo and (2) paid fees to Viagogo above the advertised ticket price (3) that were not included in the advertised price at the beginning of the Viagogo purchase flow.

> **California Subclass:** All persons in California who, during the applicable statute of limitations through the date a class is certified, (1) purchased at least one ticket from Viagogo and (2) paid fees to Viagogo above the advertised ticket price (3) that were not included in the advertised price at the beginning of the Viagogo purchase flow.

83.    Excluded from the Classes are the following individuals and/or entities: Defendant,

Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

84.    Plaintiffs reserve the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

85.    <u>Numerosity</u>: The Members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. Although the precise number of individuals is currently unknown to Plaintiffs and exclusively in the possession of Defendant, upon information and belief, the Classes likely include thousands of Members. The Class Members are identifiable within Defendant's records.

86.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual Members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, including the following:

      a.    Whether Viagogo's pricing practices were and are likely to mislead consumers;

      b.    Whether Viagogo's representations in the ticket prices displayed on Viagogo's website were and are false and misleading;

      c.    Whether Viagogo knew or should have known that its pricing practices were and are likely to mislead consumers;

      d.    Whether Viagogo knew or should have known that the ticket prices displayed on Viagogo's website were and are false and/or misleading;

      e.    Whether Viagogo made and continues to make false or misleading statements of fact concerning amounts of price reductions;

      f.    Whether the facts Viagogo failed and continued to fail to disclose in its

advertising were and are material;

g.  Whether reliance on Viagogo's misrepresentations and omissions is presumed;

h.  Whether Viagogo's acts alleged herein were unlawful;

i.  Whether New York law should apply to a nationwide class's claims;

j.  Whether consumers suffered and continue to suffer damage as a result of Viagogo's acts alleged herein;

k.  The extent of the damage suffered by consumers as a result of Viagogo's acts alleged herein;

l.  Whether Viagogo's acts alleged herein were and are unfair;

m.  The appropriate measure of damages; and

n.  Whether Viagogo should be enjoined from continuing to advertise as described herein.

87.  Typicality: Plaintiffs' claims are typical of those of the other Members of the Classes because Plaintiffs, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other Member of the Class.

88.  Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

89.  Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and

Plaintiffs intend to prosecute this action vigorously.

90.    <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

91.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs was exposed is representative of that experienced by the Class as a whole and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

92.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

93.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

94.     Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## COUNT I

### VIOLATIONS OF NEW YORK & CULTURAL AFFAIRS LAW § 25.07
### (By All Plaintiffs on Behalf of the Nationwide Class)

95.     Plaintiffs reallege and incorporate by reference all preceding allegations, as if fully set forth herein.

96.     Viagogo is a "ticket reseller or platform that facilitates the sale or resale of tickets" within the meaning of New York & Cultural Affairs Law § 25.07(4) because it facilitates the sale or resale of tickets via its website.

97.     Viagogo violated New York & Cultural Affairs Law § 25.07 by failing to disclose the "total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" after a ticket is selected.

98.     Viagogo also violated New York & Cultural Affairs Law § 25.07 by increasing the total cost of its tickets during the purchase process.

99.     The fees that Viagogo charged Plaintiffs are "ancillary fees that must be paid in order to purchase the ticket." New York & Cultural Affairs Law § 25.07(4).

100.    Plaintiffs and the Nationwide Class purchased tickets from Viagogo and were forced pay Viagogo's added fees to secure their tickets.

101.    As a direct and proximate result of Viagogo's false and misleading advertising, Plaintiffs and the Nationwide Class were misled and unfairly induced to enter into transactions and

to pay more for tickets than they would have if accurate and full pricing information had been disclosed upfront.

102.   Plaintiffs' claims have a nexus with New York in that Viagogo committed the acts described herein from its headquarters in New York. Viagogo also deployed its deceptive purchase flow from its headquarters in New York. At least some part of each purchase occurred in New York because Viagogo's half of the transaction took place there. Thus, Viagogo's commercial misconduct as described herein occurred in New York where Viagogo is headquartered. Accordingly, New York law applies to the claims of the Nationwide Class and Plaintiffs' claims.

103.   Plaintiffs and the Nationwide Class have been injured in amounts not less than the fees Viagogo added to ticket purchases without prior disclosure. Plaintiffs and the Nationwide Class seek to enjoin the unlawful practices and acts herein, to recover their statutory and actual damages, and reasonable attorneys' fees.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (By All Plaintiffs on Behalf of the Nationwide Class)

104.   Plaintiffs reallege and incorporate by reference all preceding allegations, as if fully set forth herein.

105.   New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

106.   In their sale of live event tickets to customers in New York and throughout the United States, Viagogo conducted business and trade within the meaning of § 349.

107.   Plaintiffs and the Nationwide Class purchased tickets from Viagogo.

108.   By the acts and omissions alleged herein, Viagogo has engaged in deceptive and misleading acts and practices designed to sell tickets at prices higher than they advertised and

promised to consumers, and to covertly and improperly squeeze additional money from its customers for its own profit by unilaterally imposing mandatory fees.

109. By reason of this conduct, Viagogo engaged and continue to engage in deceptive acts and practices in violation of the New York General Business Law § 349.

110. Viagogo's deceptive acts, misrepresentations, and omissions have a tendency to deceive, and in fact deceived, the general public, including Plaintiff and the Nationwide Class.

111. Viagogo's deceptive acts, misrepresentations, and omissions were and are material, in that they were likely to, and did in fact, mislead reasonable consumers acting reasonably under the circumstances.

112. Viagogo's deceptively low initially advertised prices were a substantial factor in Plaintiff and the Nationwide Class's decision to purchase tickets from Defendant.

113. Defendant's high pressure purchase flow as detailed herein caused Plaintiffs and the Nationwide Class members to purchase tickets despite the final disclosure of the previously hidden fees.

114. Although not required by New York law, Plaintiffs and the Nationwide Class members reasonably relied on Viagogo's material misrepresentations, omissions, and deceptive policies and practices, and would not have purchased tickets from Viagogo, or would not have paid as much for said tickets, had Viagogo not misrepresented the cost of tickets and engaged in high-pressure sales tactics.

115. Viagogo knowingly and willingly committed these deceptive acts and practices for their own profit and for the profit of their shareholders.

116. As a direct and proximate result of Viagogo's deceptive actions, Plaintiffs and the Nationwide Class members have been harmed and have lost money or property in the amount of the late disclosed mandatory fees that they paid to Viagogo.

117.    Viagogo's actions were the direct, foreseeable, and proximate cause of the damages that Plaintiffs and the Class members have sustained from having paid for and consumed Viagogo's services.

118.    As a result of Viagogo's deceptive actions and practices, Plaintiffs and the Nationwide Class members have suffered damages and are entitled to recover those damages or $50, whichever is greater.

119.    Plaintiffs' claims have a nexus with New York in that Viagogo committed the acts described herein from its headquarters in New York. Viagogo also deployed its deceptive purchase flow from its headquarters in New York. At least some part of each purchase occurred in New York because Viagogo's half of the transaction took place there. Thus, Viagogo's commercial misconduct as described herein occurred in New York where Viagogo is headquartered. Accordingly, New York law applies to the claims of the Nationwide Class and Plaintiffs' claims.

120.    Plaintiffs and the Nationwide Class members are also entitled to treble damages up to $1,000 because Viagogo willfully and knowingly committed deceptive acts and practices in violation of New York General Business Law § 349.

121.    Plaintiffs and the Nationwide Class members are also entitled to an injunction to halt Defendant's unlawful deceptive practices and to initiate a program to provide refunds and/or restitution to Plaintiffs and the Class members.

122.    Plaintiffs are also entitled to reasonable attorneys' fees from Defendant.

## COUNT III

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

123.    Plaintiffs reallege and incorporate by reference all preceding allegations, as if fully set forth herein.

124.    New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

125.    Viagogo's material misrepresentations, omissions, and failures to disclose as described herein also constitute false advertising in violation N.Y. Gen. Bus. Law § 350, which broadly declares unlawful all "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

126.    Section 350-e allows any person who has been injured by any violation of section 350 or section 350-a to bring an action to recover actual damages or $500, whichever is greater, as well as to obtain an injunction to enjoin the unlawful false advertising. N.Y. Gen. Bus. Law § 350-e(3).

127.    By the acts and omissions alleged herein, including, *inter alia*, advertising and promising prices for tickets that were not the true prices that they ultimately charged to customers, and failing to disclose the existence or amount of various mandatory fees when advertising the prices of tickets, Viagogo directly violated New York General Business Law § 350, causing damage to Plaintiffs and the Nationwide Class members.

128.    By reason of this conduct, Viagogo engaged in false advertising in violation of the New York General Business Law § 350.

129.    Viagogo's false advertising has a tendency to deceive, and in fact deceived, the general public, including Plaintiffs and the Nationwide Class members.

130.    Defendant's false advertising is and was material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

131.    The deceptively low price advertised by Viagogo was a substantial factor in Plaintiffs' and Nationwide Class members' decision to purchase tickets on Defendant's website.

132.    Although not required by New York law, Plaintiffs and the Nationwide Class members reasonably relied on Viagogo's false advertising and would not have purchased live event tickets from Viagogo or would not have paid as much for said tickets, had they known that Viagogo advertised and promised prices were false.

133.    Viagogo knowingly and willingly made these false advertisements and misrepresentations for their own profit and for the profit of their shareholders.

134.    As a direct and proximate result of Viagogo's false advertising, Plaintiffs and the Nationwide Class members have been harmed and have lost money or property in the amount of the mandatory fees that they paid to Viagogo.

135.    Viagogo's actions were the direct, foreseeable, and proximate cause of the damages that Plaintiffs and the Nationwide Class members have sustained from having paid for tickets.

136.    Plaintiffs' claims have a nexus with New York in that Viagogo committed the acts described herein from its headquarters in New York. Viagogo also deployed its deceptive purchase flow from its headquarters in New York. At least some part of each purchase occurred in New York because Viagogo's half of the transaction took place there. Thus, Viagogo's commercial misconduct as described herein occurred in New York where Viagogo is headquartered. Accordingly, New York law applies to the claims of the Nationwide Class and Plaintiffs' claims.

137.    As a result of Viagogo's false advertising, Plaintiffs and each Nationwide Class member have suffered damages and are therefore entitled to recover those damages or $500 per person (whichever is greater).

138.    Plaintiffs and each Nationwide Class member are also entitled to treble damages up to $10,000 because Viagogo willfully and knowingly conducted false advertising in violation of New York General Business Law § 350.

139.    Plaintiffs and each Nationwide Class member are also entitled to an injunction to

halt Defendant's unlawful false advertising and to initiate a program to provide refunds and/or restitution to Plaintiff and the class.

140.    Plaintiffs are also entitled to reasonable attorney's fees from Defendant.

## COUNT IV

**VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17500**
**(False Advertising Law)**
**(By Plaintiff Stockton and on Behalf of the California Subclass)**

141.    Plaintiff Stockton re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

142.    Viagogo has engaged in false and misleading advertising in violation of California Business and Professions Code § 17500. Viagogo knowingly and intentionally misrepresented the price of tickets by advertising deceptively low base prices while concealing mandatory fees until the final stage of the purchase process.

143.    Viagogo engaged in a deliberate scheme to induce consumers to initiate and complete ticket purchases under false pretenses by making misleading pricing representations and material omissions. These deceptive practices were carried out through both its website and mobile platform and were disseminated to consumers in California and beyond.

144.    Viagogo acted willfully, knowingly, and in conscious disregard of the truth in concealing material pricing information and creating the false impression that the advertised base price was the total price. Viagogo further reinforced its deception by using countdown popups that promised to lock in the misleading low advertised price and other urgency tactics to compel consumers to complete transactions before learning the true cost.

145.    As a direct and proximate result of Viagogo's false and misleading advertising, Plaintiff Stockton and members of the California Subclass were misled and unfairly induced to enter into transactions and to pay more for tickets than they would have if accurate and full pricing

information had been disclosed upfront.

146.   Plaintiff Stockton and the California Subclass have been injured in amounts not less than the fees Viagogo added to ticket purchases without prior disclosure. The total amount of these unlawfully collected fees is presently unknown but believed to exceed hundreds of thousands, if not millions, of dollars in the aggregate.

## COUNT V

**VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200**
**(Unfair Competition Law)**
**(By Plaintiff Stockton and on Behalf of the California Subclass)**

147.   Plaintiff Stockton re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

148.   Viagogo has engaged in unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professions Code § 17200, *et seq*. The conduct described above—including Viagogo's use of misleading base ticket prices, failure to disclose mandatory fees until the final step of checkout, and deceptive urgency tactics—constitutes unfair competition within the meaning of the statute.

149.   Viagogo's conduct is unlawful because it violates California Business and Professions Code § 17500 (False Advertising Law) and the Consumers Legal Remedies Act (California Civil Code §§ 1770(a)(9), (14), and (29)), among other federal and state laws and regulations that require truthful advertising and upfront disclosure of material terms.

150.   Viagogo's conduct is also unfair in that it offends established public policy, is immoral, unethical, oppressive, and unscrupulous, and causes harm to consumers that outweighs any countervailing benefits. Viagogo lures consumers with misleading base prices and exploits their time and effort invested in the transaction to impose hidden fees at the point of sale.

151.   Viagogo's conduct is fraudulent because it is likely to deceive members of the

public into believing that the advertised base ticket price is the actual purchase price, when in fact the true cost is significantly higher due to undisclosed fees added at checkout.

152.    As a direct and proximate result of Viagogo's unlawful, unfair, and fraudulent business practices, Plaintiff Stockton and the California Subclass were misled and induced to overpay for tickets. They paid hidden service, delivery, and related fees that they would not have agreed to had the true price been disclosed upfront. The total monetary injury to the Class is unknown at this time but is believed to exceed hundreds of thousands, if not millions, of dollars in the aggregate. These amounts have been unjustly retained by Viagogo and should be restored to Plaintiff Stockton and the California Subclass.

153.    If Viagogo is permitted to continue to engage in the unlawful, unfair, and fraudulent ticket pricing practices described above, their conduct will engender further injury, expanding the number of injured members of the public beyond its already large size, and will tend to render any judgment at law, by itself, ineffectual. Under such circumstances, Plaintiff Stockton and the California Subclass have no adequate remedy at law in that Viagogo will continue to engage in the wrongful conduct alleged herein, thus engendering a multiplicity of judicial proceedings. Plaintiff Stockton and the California Subclass request and are entitled to injunctive relief, enjoining Defendant from continuing to engage in the unfair, unlawful, and fraudulent advertising described herein.

### COUNT VI

**VIOLATION OF CAL. CIV. CODE § 1770**
**(California Consumer Legal Remedies Act)**
**(By Plaintiff Stockton and on Behalf of the California Subclass)**

154.    Plaintiff Stockton re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

155.    At all relevant times, Plaintiff Stockton and members of the California Subclass were

"consumers" within the meaning of California Civil Code § 1761(d), as they sought or acquired tickets for personal, family, or household use.

156.    At all relevant times, the tickets marketed and sold by Viagogo constituted "goods" as defined in California Civil Code § 1761(a), in that they were "tangible chattels" purchased for use in attending live entertainment events.

157.    At all relevant times, Viagogo constituted a "person" as defined by California Civil Code § 1761(c).

158.    The transactions between Plaintiff, the California Subclass, and Viagogo—whereby consumers purchased tickets through Viagogo's website or mobile app—constitute "transactions" within the meaning of California Civil Code § 1761(e).

159.    Viagogo's conduct as alleged herein violates the CLRA, California Civil Code § 1770(a), including but not limited to following provisions:

    (a) Section 1770(a)(9)—Advertising goods with the intent not to sell them as advertised. Viagogo advertised deceptively low-ticket prices without disclosing mandatory fees that significantly increase the total purchase price, and never intended to sell tickets at the advertised price alone;

    (b) Section 1770(a)(14)—Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law. Viagogo represented those consumers had a right to purchase tickets at a given "locked-in" or "guaranteed" price when in reality that price excluded substantial hidden fees added only at the end of the transaction; and

    (c) Section 1770(a)(29)(A)—Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than

(i) taxes or fees imposed by a government, and (ii) postage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer. Viagogo advertised, displayed, or offered a price for tickets that did not include all of its fees.

160.    Viagogo's misrepresentations and omissions were made to induce reliance by Plaintiff Stockton and members of the California Subclass, who reasonably believed they were purchasing tickets at the initially advertised prices and were misled into completing the purchase based on that belief.

161.    On May 23, 2025, Plaintiff Stockton sent Viagogo a demand letter pursuant to California Civil Code § 1782, by certified mail, return receipt requested, identifying the specific violations of the CLRA and providing Viagogo with an opportunity to correct its conduct. Should Viagogo fail to do so, Plaintiff will amend this complaint to add a claim for damages under the CLRA.

162.    Plaintiff Stockton, on behalf of himself and the California Subclass, seeks an order enjoining Defendant's unfair or deceptive acts or practices, equitable relief, and an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e).

## COUNT VII

### VIOLATIONS OF N.J. STAT. ANN. §§ 56:8-1 *ET SEQ.*
### (New Jersey Consumer Fraud Act)
### (By Plaintiff Berlinger and on Behalf of the New Jersey Subclass)

163.    Plaintiff Berlinger re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

164.    Plaintiff Berlinger and members of the New Jersey Subclass are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d), and the transactions at issue, involving the purchase of tickets for entertainment events, constitute "sales" of "merchandise" as defined under N.J. Stat.

Ann. §§ 56:8-1(c) and (e).

165.    Viagogo has engaged in unlawful conduct in violation of N.J. Stat. Ann. § 56:8-2 by using deception, fraud, false promises, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that Plaintiff Berlinger and members of the New Jersey Subclass members rely upon such practices in connection with the sale of tickets.

166.    Viagogo falsely advertised ticket prices by failing to disclose fees until the final step of the transaction—*after* consumers had invested time and effectively committed to a specific purchase. These material omissions and deceptive representations were calculated to entice consumers with artificially low prices, only to impose significantly higher charges at the point of sale.

167.    Viagogo's practices constitute unconscionable commercial conduct and misrepresentation under the New Jersey Consumer Fraud Act. Viagogo knew or should have known that reasonable consumers would be misled by its pricing scheme and incomplete advertising.

168.    Plaintiff Berlinger and members of the New Jersey Subclass reasonably relied on Viagogo's representations and omissions regarding the low advertised ticket prices, and as a result, suffered ascertainable losses, including but not limited to overpayment for tickets due to hidden and deceptive fees. These losses were directly and proximately caused by Viagogo's unlawful conduct.

169.    Viagogo's conduct impacts the public interest and has harmed a broad class of consumers throughout New Jersey who were subjected to the same uniform and deceptive business practices.

170.    Pursuant to N.J. Stat. Ann. §§ 56:8-19 and 56:8-20, Plaintiff Berlinger and members of the New Jersey Subclass seek all available legal and equitable remedies, including but not limited to, treble damages, attorneys' fees, costs, and injunctive relief barring Viagogo from continuing its deceptive and unconscionable practices in New Jersey.

## COUNT VIII

### VIOLATIONS OF COLO. REV. STAT. §§ 6-1-101 *ET SEQ.*
### (Colorado Consumer Protection Act)
### (By Plaintiff Collins and on Behalf of the Colorado Subclass)

171.    Plaintiff Collins re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

172.    The Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101 through 6-1-116, prohibits deceptive trade practices, including misrepresentations and omissions in connection with the advertisement and sale of goods and services.

173.    Plaintiff Collins and the members of the Colorado Subclass are "consumers" under the CCPA, and the tickets sold by Viagogo constitute "articles" and "services" within the meaning of Colo. Rev. Stat. § 6-1-102.

174.    Viagogo engaged in deceptive trade practices in violation of Colo. Rev. Stat. § 6-1-105(1)(e) and (g), by knowingly making false representations as to the price and characteristics of tickets, and by failing to disclose material information necessary to make those representations not misleading.

175.    Specifically, Viagogo lures consumers with falsely advertised ticket prices, omitting significant "service" and "delivery" fees until the final step of the transaction, thereby concealing the true cost of the transaction and inducing consumers to purchase tickets under materially false pretenses.

176.    Viagogo's conduct is unfair, unconscionable, and deceptive, and it was undertaken intentionally and in the course of Viagogo's business, with the aim of misleading consumers to increase profits.

177.    Plaintiff Collins and the members of the Colorado Subclass relied on Viagogo's misrepresentations and omissions and suffered actual damages as a direct result, including but not

limited to the inflated prices paid for tickets, which included hidden and deceptive fees. These injuries are of the type the CCPA was designed to prevent and are directly traceable to Viagogo's misconduct.

178.    Pursuant to Colo. Rev. Stat. § 6-1-113(2.9), Plaintiff Collins and the members of the Colorado Subclass are entitled to recover actual damages, injunctive relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members, respectfully requests judgment against Defendant and that the Court grant the following relief:

A.    An Order certifying the Classes and appointing Plaintiffs and their Counsel to represent the Class as a whole;

B.    An award of damages, including actual, nominal, consequential, and punitive damages as permitted by law, in an amount to be determined;

C.    An award of attorneys' fees, costs, and litigation expenses as permitted by law;

D.    Prejudgment interest on all amounts awarded; and

E.    Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all claims so triable.

[Rest of page left intentionally blank]

Dated: May 23, 2025                          Respectfully Submitted,

/s/ Katherine M. Aizpuru
Katherine M. Aizpuru (Bar No. 5305990)
Robin P. Bleiweis*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, D.C. 20006
Phone: (202) 973-0900
kaizpuru@tzlegal.com
rbleiweis@tzlegal.com

Annick M. Persinger*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Phone: (510) 254-6808
apersinger@tzlegal.com

*Counsel for Plaintiff and Class*

*Pro Hac Vice application forthcoming